# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**ASHLY MARIE BATTEN,**

        **Plaintiff,**

**v.**                                                                           **Case No:  6:20-cv-101-Orl-37DCI**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Ashly Marie Batten (Claimant) appeals the Commissioner of Social Security's final decision denying her application for a period of disability, disability insurance benefits, and Supplemental Security Income (SSI). R. 572. Claimant makes three arguments challenging the Commissioner's final decision and, based on those arguments, requests that the matter be reversed and remanded for further proceedings. Doc. 28. The Commissioner argues that the ALJ committed no error and that the ALJ's decision is supported by substantial evidence and should be affirmed. *Id.* The undersigned **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**.

    **I.**      **Procedural History[1]**

On March 21, 2013, the claimant filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. In both

---

[1] The undersigned notes that the procedural history stated on page one of the Joint Memorandum appears to be inaccurate. Doc. 28 at 1. The procedural history cited in this Report is drawn from the decisions of the administrative law judges in the record. R. 19; 522; 572. Unfortunately, this kind of error permeates the briefing the Court regularly receives from both the government and many members of the social security bar. The undersigned has commented on this issue previously as it invites error by the court and wastes judicial resources.

applications, Claimant alleged disability beginning December 31, 2011. R. 572. The claims were denied initially and upon reconsideration. *Id*. Thereafter, Claimant filed a written request for hearing, and, on October 15, 2015, an administrative law judge held a hearing at which the Claimant appeared with an attorney and a vocational expert testified. *Id*. In a decision dated November 3, 2015, that administrative law judge denied Claimant's applications, finding that Claimant was not disabled. R. 572-83.

Claimant then appealed to the United States District Court for the Middle District of Florida, and this matter was remanded to the Commissioner for reconsideration. *See* 6:17-cv-134-TBS, at Doc. 24 (Sept. 12, 2018).

On remand, on September 9, 2019, a second administrative law judge (the ALJ) held a second hearing. R. 522. At the hearing, Claimant (who was represented by the same attorney who represents Claimant now) and a second vocational expert testified. *Id*. In a second decision dated September 27, 2019 (the Decision), the ALJ found that Claimant has not been under a disability, as defined by the Social Security Act, from December 11, 2011, through the date of the Decision. R. 536. The parties represent that Claimant has exhausted all administrative remedies available and that the Decision is ripe for review pursuant to 42 U.S.C. § 405(g). Doc. 28 at 2.

**II.     The ALJ's Decision**

In the Decision, the ALJ found that Claimant suffered from the following severe impairments: migraine headaches and hydrocephalus status post revision of ventriculoperitoneal shunt. R. 525. The ALJ also found that Claimant suffered from non-severe impairments related to uterine bleeding, obesity, and anxiety disorder. R. 525-26. The ALJ determined that none of the foregoing impairments, individually or in combination, met or medically equaled any listed impairment. R. 525-28.

The ALJ next found that Claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) [2] and 416.967(b) with the following specific limitations:

> [Claimant] can frequently climb ramps and stairs; she can never climb ladders, ropes or scaffolds; she can never work in loud or very loud environments; she must avoid concentrated exposure pulmonary irritants, such as fumes, odors, dusts, gases and poor ventilation; and must avoid even moderate exposure to work place hazards, such as moving machinery, moving mechanical parts and unprotected heights.

R. 528.  In light of this RFC, the ALJ found that Claimant "is capable of performing past relevant work as a Customer Service Representative and Receptionist."  R. 534.  Thus, the ALJ concluded that Claimant was not disabled from her alleged disability onset date (December 11, 2011) through the date of the Decision (September 27, 2019).  R. 536.

### III.    Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards, and whether the Commissioner's findings of fact are supported by substantial evidence.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The Court may not reweigh evidence or substitute its judgment for

---

[2] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV. Analysis

Claimant raises three assignments of error: 1) the ALJ erred in determining Claimant's RFC because the ALJ erred in assigning "some weight" to the opinions of Drs. Montoya and Iyengar (Claimant's treating neurosurgeon and neurologist) and finding that Claimant had the ability "to perform light [work] with some non-exertional limitations" (Doc. 28 at 14-21); 2) the ALJ erred by relying on a question posed to the vocational expert that contained that RFC (*Id*. at 31-33); and 3) the ALJ erred by making a "boiler plate" finding as to Claimant's credibility (*Id*. at 34-36). The undersigned will address each assignment of error in turn.

### A. Drs. Montoya and Iyengar

In the first appeal to district court, the Court found that the first administrative law judge "discussed some of Dr. Montoya and Dr. Iyenger's treatment records, but failed to assign weight to their findings and opinions in her written decision." 6:17-cv-134-TBS, Doc. 24 at 6. In its analysis, the Court also explicitly rejected the Commissioner's assertion that the records at issue were not opinions that must be weighed, finding that they were. *Id*. at 8-9.

In considering the matter on remand, the ALJ considered the records of Dr. Montoya and Dr. Iyengar in what is almost a verbatim copy of that first administrative law judge's description of those records. Then, the ALJ stated the following:

> Pursuant to the District Court remand order, (Exhibits 14A/10, 15A, and 13A). I have considered Dr. Montoya's and Dr. lyengar's medical opinions.
>
> I considered Drs. Montoya and Dr. lyengar's medical opinions, and gave them only some weight, since they are mostly based upon the claimant's subjective statements regarding the frequency and intensity of her migraine headaches, and not upon any

>objective medical finding. For instance, as suggested by SSR l 9-4p, the opinions are not based upon radiological studies, angiographies, blood chemistry and urinalysis, sinus x-ray, electroencephalogram (EEG), eye examination, or lumbar puncture. Further, Drs. Montoya and lyengar's opinion are largely transcriptions of the claimant's alleged symptoms, and do not include functional limitations, or limitations concerning the claimant's overall ability to work.

R. 534.

The ALJ assesses the claimant's RFC and ability to perform past relevant work at step four of the sequential evaluation process. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. § 404.1546(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining and non-examining medical sources. *See* 20 C.F.R. § 404.1545(a)(3); *see also Rosario v. Comm'r of Soc. Sec.*, 490 F. App'x 192, 194 (11th Cir. 2012). A medical opinion is a statement from an acceptable treating, examining, or nonexamining medical source that "reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite [his or her] impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *Winschel*, 631 F.3d at 1179; see also 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding;

or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quotation marks omitted).

Here, Claimant asserts that the ALJ erred by giving the opinions of Dr. Montoya and Dr. Iyengar "some weight." Doc. 28 at 14-21. But Claimant fails to identify exactly which opinions or treatment notes she relies upon in making that argument and, in fact, identifies no functional limitations contained within any opinions by Dr. Montoya or Dr. Iyengar. *Id.*

As an initial matter, having reviewed the records of Dr. Montoya and Dr. Iyengar, the undersigned has serious doubts that any of the statements of those doctors are medical opinions that must ordinarily be weighed. "A medical provider's treatment notes may constitute medical opinions if the content reflects judgment about the nature and severity of the claimant's impairments." *Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 811 (11th Cir. 2017) (citing *Winschel*, 631 F.3d at 1179). At most, the doctors recorded descriptions of Claimant's subjective symptoms but—with one exception—made no relevant diagnosis, described no specific symptoms or the severity of Claimant's symptoms (other than subjective complaints), articulated no prognosis, and provided no information concerning any functional limitation. The one exception relates to Dr. Montoya's initial belief that Claimant's shunt might be causing her headaches, and his efforts to repair that shunt, which efforts are described in his records and are complimented by MRIs and other objective testing. Indeed, Claimant has a surgically installed shunt as a result of congenital hydrocephalus. To the extent Claimant had an objectively diagnosed and verifiable condition that could have caused her headaches, Dr. Montoya's efforts corrected the objectively identifiable issue with Claimant's shunt (i.e. a mechanical malfunction), but Claimant continued to have subjective complaints that were not thereafter objectively verified. However, the Court previously found that the records at issue were opinions that had to be weighed and that finding

was never appealed, so the Court must follow the law of this case and assume that the doctors' treatment notes contained opinions that the ALJ had to weigh.

On remand, the ALJ assigned weight to the opinions of Dr. Montoya and Dr. Iyengar. The ALJ gave "some weight" to the doctors' opinions because those opinions were "mostly based upon the claimant's subjective statements regarding the frequency and intensity of her migraine headaches, and not upon any objective medical finding." R. 534. The ALJ then provided further explanation about the lack of objective findings, referencing an absence of confirming MRIs and other objective testing. *Id*. The ALJ also noted that the opinions contained no functional limitations. *Id*.

The ALJ's findings are accurate and, thus, supported by substantial evidence. To the extent that the treatment records of Dr. Montoya and Dr. Iyengar contained any statements that might be deemed inconsistent with the RFC (and the Claimant has not identified any), those records were either descriptions of subjective complaints by Claimant or unsupported by the evidence of record, including the doctors' own treatment records. But, critically, Dr. Montoya and Dr. Iyengar did not opine to any functional limitations. And their treatment notes—with the one exception noted earlier—are based almost entirely on Claimant's subjective complaints and unsupported by any objective evidence of record.

Yet a straightforward analysis under *Winschel*—i.e. an analysis of whether the ALJ properly discounted the opinions—is semantically difficult because Claimant fails to identify any particular opinion that was allegedly improperly weighed or that even contained a functional limitation.[3] And Claimant does not identify how the RFC is inaccurate because of the alleged error

---

[3] The fact that Claimant told her doctor that lying down helps with her headaches is hardly an opinion by a medical provider.

- 7 -

in assigning weight to the opinions of Dr. Montoya and Dr. Iyengar.  In fact, though Claimant asserts in a perfunctory manner that the ALJ erred in the formulation of the RFC, she does not actually assert that the RFC is incorrect in any particular way.

Having reviewed the record, even if Claimant had cited to a record by either doctor, there is no indication that any such record would contradict the RFC.  *See Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination); *see also Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam).  Taking into consideration that the ALJ found Claimant's migraine headaches to be a severe impairment, a diagnosis does not establish limitations.  "The mere existence of [] impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

Looking to the entirety of the records at issue, the undersigned finds that the opinions of Dr. Montoya and Dr. Iyengar were properly weighed and, regardless, do not contradict the RFC. Thus, any error in weighing the opinions is harmless.  *See Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination); *Snell v. Comm'r Soc. Sec.*, 2013 U.S. Dist. LEXIS 185166, at *9 (M.D. Fla Dec. 6, 2013) (The ALJ's error must result in prejudice, such that had the ALJ done things differently, the RFC consideration, and ultimate disability decision, would be different.) (citing *James v. Astrue*, 2012 U.S. Dist. LEXIS 32312, at *6-7 (M.D. Fla. Mar. 12, 2012)).

Accordingly, it is respectfully **RECOMMENDED** that the Court reject Claimant's first assignment of error concerning the opinions of Dr. Montoya and Dr. Iyengar.

### B. Vocational Expert

At step five of the sequential evaluation process, an ALJ may rely on the testimony of a VE in determining whether the claimant can perform jobs in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228-30 (11th Cir. 1999) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). The ALJ is required to pose hypothetical questions that are accurate and that include all of the claimant's functional limitations. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). The ALJ, however, is not required to include "each and every symptom" of the claimant's impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or "findings . . . that the ALJ . . . properly rejected as unsupported" in the hypothetical question, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Where the ALJ relies on the VE's testimony but fails to include all the claimant's functional limitations in the hypothetical question, the final decision is not supported by substantial evidence. *See Pendley*, 767 F.2d at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

Claimant concedes that the ALJ asked the VE a hypothetical question consistent with the RFC. Doc. 28 at 31-32. But, relying upon her arguments concerning Dr. Montoya and Dr. Iyengar, Claimant argues that the question to the VE was improper because the RFC did not account for all of Claimant's limitations because the ALJ did not properly weigh the opinions of Dr. Montoya and Dr. Iyengar. *Id.* It is a perfunctory, vague, and tautological argument and, once again, Claimant fails entirely to state how the RFC was incorrect or what functional limitations the ALJ failed to include in the RFC (and thus the hypothetical question to the VE) by allegedly improperly weighing the opinions of Dr. Montoya and Dr. Iyengar. Further, to the extent Claimant's argument would have any merit, it explicitly relies upon the success of her first assignment of error, which the undersigned has rejected.

Accordingly, it is respectfully **RECOMMENDED** that the Court reject Claimant's second assignment of error.

## C. Credibility

Claimant argues that the ALJ erred in considering Claimant's testimony concerning her subjective symptoms because the ALJ made a "boiler plate" credibility finding. Doc. 28 at 34-36. The Commissioner argues that the ALJ provided specific reasons in support of his credibility determination and that his credibility determination is supported by substantial evidence. *Id*. at 36-40.

A claimant may establish "disability through his own testimony of pain or other subjective symptoms." *Dyer*, 395 F.3d at 1210. A claimant seeking to establish disability through her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id*. at § 404.1529(c)(1)-(3). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62; *see* SSR 16-3p, 2016 WL 1237954 ("The determination or decision must contain specific

reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."). The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence. *Foote*, 67 F.3d at 1562.

> The ALJ summarized Claimant's testimony as follows:
>
> At the first hearing, the claimant testified that her son attends pre-kindergarten from 9:00 a.m. to 12:00 p.m. The claimant testified that she takes care of her children on a full-time basis. According to the claimant, this includes all of the household cleaning and grocery shopping. The claimant also testified that she is able to drive. When asking about the notes concerning stress, the claimant stated she did not see anyone for that issue. She does go to a Wednesday bible study to have some quiet time and attends church as well. She admitted exercise made her feel better about herself and helped with her stress.
>
> The claimant stated that her headaches now were 3-4 times a week, with pain levels of 8-9. She said they could last 3 days in a row. During bad days, she has to go to her room and lie down and nothing gets done.
>
> The claimant testified that her headaches interfere with her concentration and ability to sleep. However, in contrast, in August 2015, the claimant denied memory or decreased concentration issues (Exhibit 14F/4). The claimant testified that her headaches also cause "laziness." Some contemporaneous progress notes described that the claimant's daytime drowsiness was only mild (Exhibit 14F/16). The claimant testified that she experiences "good and bad" days. The claimant testified that on "bad" days "nothing gets done." The claimant estimated that bad days could last three or four days in a row. Asked about work, the claimant testified that she is unable to work because she cannot look at computer screens or sit in a chair "for long periods of time."
>
> According to the claimant, one of her treating physicians recommended that the claimant ride a bicycle. Treatment entries indicate that the claimant did so for three or four times per week for 45-60 minutes (Exhibit l 4F). Though these records also document the claimant doing aerobics classes, the claimant denied doing so at the first hearing. The claimant testified that the neurologist believed her headaches could be related to her weight, although nothing in the record indicates that correlation. The claimant testified that she rides a stationary bicycle two or three times per week. The claimant testified that she does so at a local gym. The claimant testified that she goes to the gym after taking her son to school. The claimant testified that her youngest child stays at a "kids club" at the gym while she rides her bicycle. The claimant described her exercise as a "stress reliever" but added that it does not alleviate her headaches.

> Treatment records document findings that support the conclusion that the claimant does not experience any other issues that preclude a reduced range of light exertional work. For example, a November 2014 hospital entry notes that the claimant retains a full range of motion in her extremities and demonstrates normal musculoskeletal and neurological findings (Exhibit 11F/23). As noted previously, an August 2015 physical examination of the claimant was essentially normal (Exhibit 14F/4-5). A January 2015 entry describes the claimant's upper and lower extremities retain full strength, her gait is normal, and that she is able to tandem, toe and heel walk (Exhibit 13F). August and October 2014 entries also note full strength, a normal gait, and other normal findings (Exhibit 12F, pages 5 and 7).
>
> Similarly, on August 28, 2015, the claimant denied having any musculoskeletal symptoms, and overall physical examination were unremarkable, with normal gait, and normal neurological findings (Exhibit 14F/4-5). Similarly, on February 25, 2019, in the first follow up in 13 months, the claimant denied any changes in health, and physical examination of all major systems was unremarkable, showing normal neurological and strength findings, and no neurological deficits (Exhibit l 5F /2). Further, the claimant testified at the hearing that she is the primary caretaker of her two young children and exercises multiple times per week, going to a gym outside the house while on child is in a morning program and the other in the gym daycare.
>
> The claimant testified that she recently began attending church. The claimant testified that she also attends a bible study at her church on Wednesday night. The claimant testified that she does Bible study at the church while her children are supervised, and that this allows her to engage in "quiet time."

R. 531-32.

As can be seen, although a slightly unusual format, the ALJ interspersed within the discussion of Claimant's testimony a discussion of the record evidence concerning that testimony. *Id*. The ALJ found then found that: "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 532. The ALJ then considered the state agency consultant's opinion, giving "great weight" to that opinion—a decision unchallenged by Claimant—and discussed it in reference to Claimant's testimony. R. 532-33. Next, the ALJ

provided five, enumerated reasons that "[t]he record fails to establish the frequency and intensity of the alleged headaches"—again discussing Claimant's testimony in conjunction with the record evidence. R. 533-34.

Based on the foregoing, the ALJ provided several specific reasons in support of his credibility determination, as well as record citations to the evidence supporting his determinations. R. 531-34. To the extent Claimant attempts to argue that each of the ALJ's proffered reasons is inconsistent with other evidence (but not that those reasons are unsupported by substantial evidence), that argument must fail because the Court's review is limited to determining whether the ALJ's decision is supported by substantial evidence, not whether other evidence supports a different outcome. *Foote*, 67 F.3d at 1558. Thus, the Court must affirm the ALJ's decision if it is supported by substantial evidence. This is true even if the Court found that the evidence the Claimant cites preponderates against that decision. *Bloodsworth*, 703 F.2d at 1239. To the extent that Claimant cites to a single paragraph in the ALJ's Decision and asserts that the ALJ's credibility determination was boilerplate due to the existence of that paragraph (but fails to acknowledge the extensive discussion of Claimant's testimony), that is a gross mischaracterization of the record as a whole and is simply incorrect.

Upon review of the record, the undersigned finds that the reasons articulated by the ALJ in support of his credibility determination support that determination and are supported by substantial evidence. Thus, the undersigned finds that the ALJ articulated good cause in finding Claimant's testimony "not entirely consistent" with the evidence of record and that the ALJ's reasons are supported by substantial evidence. *See Foote*, 67 F.3d at 1561-62 (reviewing court will not disturb credibility finding with sufficient evidentiary support). Moreover, the undersigned notes that Claimant again does not actually identify any portion of her testimony that allegedly conflicts with

the RFC. *See, e.g.*, *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, at 777 n.2 (11th Cir. 2016) (stating that claimant's perfunctory argument was arguably abandoned); *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

Therefore, the undersigned respectfully **RECOMMENDS** that the Court reject Claimant's third assignment of error.

### V.     Conclusion

Accordingly, it is respectfully **RECOMMENDED** that the Court:

1. **AFFIRM** the Commissioner's final ecision; and
2. Direct the Clerk to enter judgment in favor of the Commissioner and against the Claimant, and close the case

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on December 21, 2020.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy